*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellant

**v.**

**Jacob L. PEASE, Information Systems Technician Second Class**
United States Navy, Appellee

**No. 16-0014**
Crim. App. No. 201400165

Argued January 12, 2016—Decided March 17, 2016

Military Judge: J. K. Waits

For Appellant: *Major Suzanne M. Dempsey*, USMC (argued); *Colonel Mark K. Jamison*, USMC; *Captain Matthew M. Harris*, USMC; *Lieutenant Amy L. Freyermuth,* JAGC, USN, and *Brian K. Keller*, Esq. (on brief).

For Appellee: *Eric S. Montalvo,* Esq. (argued); *Lieutenant Christopher C. McMahon*, JAGC, USN, and *Carol A. Thompson,* Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN, Judges STUCKY and RYAN, and Senior Judge SENTELLE, joined.

———————

Judge OHLSON delivered the opinion of the Court.[1]

A panel of officer and enlisted members sitting as a general court-martial convicted Appellee of two specifications of fraternization, one specification of abusive sexual contact, and three specifications of sexual assault, in violation of Articles 92 and 120, UCMJ, 10 U.S.C. §§ 892, 920 (2012). The adjudged and approved sentence provided for a dishonorable discharge and confinement for six years. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) af-

---

[1] Senior Judge David B. Sentelle, of the United States Court of Appeals for the District of Columbia Circuit, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

firmed the Article 92, UCMJ, fraternization convictions, but reversed the Article 120, UCMJ, sexual assault and abusive sexual contact convictions on the basis of factual insufficiency and directed the case be returned for a rehearing on the sentence. *United States v. Pease*, 74 M.J. 763, 771 (N-M. Ct. Crim. App. 2015).

Following this decision, the Judge Advocate General of the Navy (TJAG) certified the following two issues for our review under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2012):

> I. The lower court judicially defined "incapable of consenting" contrary to the instructions given to the members and used this definition to find three charges of sexual assault and one charge of abusive sexual contact factually insufficient. In creating this new legal definition not considered by the factfinder and nowhere present in the record, did the lower court consider matters outside the record and outside its statutory authority in conducting its factual sufficiency review?

> II. The lower court judicially defined "incapable of consenting" in a manner that limits prosecutions to only two situations—"inability to appreciate" and "inability to make and communicate" an agreement. To prove the latter, the court further required proof that a victim be unable both to make and to communicate a decision to engage in the conduct at issue. Nothing in the statute reflects Congressional intent to limit Article 120, UCMJ, prosecutions in this manner. Did the lower court err?

*United States v. Pease*, 75 M.J. 44, 44–45 (C.A.A.F. 2015). We answer the certified issues in the negative by holding that (1) the CCA was not bound by the military judge's trial instructions in conducting its Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012), factual sufficiency review, and (2) the CCA applied the proper definition of "incapable of consenting" in its factual sufficiency analysis despite an apparent scrivener's error in its definition of "incapable of consenting." We therefore affirm the CCA's decision.

## I. Background

Appellee was an information systems technician second class (IT2) serving aboard the USS Mount Whitney. He had supervisory responsibilities over two female sailors, IT2 BS and Information Systems Technician Seaman (ITSN) SK, in the radio division of the ship's communications department. In separate incidents involving port calls, Appellee engaged in sexual activities with these two sailors after they had consumed large amounts of alcohol, resulting in the Government charging Appellee with the three sexual assault and one abusive sexual contact specifications at issue in this appeal.[2]

The panel convicted Appellee of the sexual assault and sexual contact offenses after receiving the military judge's instructions on the elements for these offenses. Of relevance to this case, the military judge instructed the members that in order to find Appellee guilty, they had to be convinced beyond a reasonable doubt that Appellee committed the sexual acts and sexual contact while ITSN SK and IT2 BS were "incapable of consenting to" the sexual activity "due to impairment by an intoxicant, and that the condition was known or reasonably should have been known by" Appellee. The military judge explained the concept of "consent" as follows:

> Evidence of consent to the sexual act is relevant as to whether the prosecution has proven the elements of the offense beyond a reasonable doubt. Stated another way, evidence that the alleged victims consented to any of the alleged sexual acts [or contact],

---

[2] The Government charged Appellee with sexually assaulting ITSN SK by penetrating her vulva with his penis while she "was incapable of consenting to the sexual act due to impairment by an intoxicant, and that condition was known or reasonably should have been known by" Appellee. The Government also charged Appellee with (1) abusive sexual contact by "biting" IT2 BS's breast while she was "incapable of consenting to the sexual contact due to impairment by an intoxicant, and that condition was known or reasonably should have been known by" Appellee, and (2) sexual assault by (a) penetrating IT2 BS's anus with his penis and (b) penetrating her vulva with his penis while IT2 BS "was incapable of consenting to the sexual act due to impairment by an intoxicant, and that condition was known or reasonably should have been known by" Appellee.

either alone or in conjunction with the other evidence in this case, may cause a reasonable doubt as to whether the accused knew or reasonably should have known that the alleged victims were incapable of consenting to the sexual acts due to impairment by an intoxicant.

"Consent" means a freely given agreement to the conduct at issue by a competent person….

Lack of consent may be inferred based on the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent, or whether a person did not resist or ceased to resist only because of another person's actions. A sleeping, unconscious, or incompetent person cannot consent to a sexual act.

The military judge did not instruct the members about the meaning of "incapable of consenting."

During panel deliberations, the members requested guidance on the meaning of the word "competent" by asking, "Is there a legal definition of a competent person?" Appellee proposed that the military judge use the definition of "competent" from *Black's Law Dictionary*—"a basic [or] minimal ability to do something." The Government took the position that the members should "figure it out" by applying the plain meaning of the word. The military judge followed the Government's "figure it out" approach and instructed the members as follows:

> Members, the counsel and I have discussed it. There is no definition within this statute. Okay? We can look to other sources. We can look to other statutes. We can look to legal dictionaries, but those may provide definitions that are inapposite to the statute in this case, so when a statute does not give a definition then it's up to the reader to just employ the plain and ordinary meaning of the words. Okay? So whatever it means to you based on your experience, understanding and vocabulary lessons from elementary school, whatever it may be, the court's not able to give you a more precise legal definition under this statute because there is not one. Okay?
>
> So I just admonish you to go back and read the elements of the offenses. Read the definitions and the other instructions that I provided you for all of the

Charges and Specifications and you're going to ---
nobody said this was going to be easy. You're going
to have to make a determination based on the law
as I have instructed you. Okay?

After receiving these instructions, the members returned findings of guilty for the sexual assault and abusive sexual contact specifications.

At the CCA, Appellee challenged the factual sufficiency of, inter alia, his sexual assault and abusive sexual assault convictions. Before evaluating for factual sufficiency, the CCA defined four terms from Article 120, UCMJ:

(1) "[A] 'competent' person is simply a person who possesses the physical and mental ability to consent."

(2) "An 'incompetent' person is a person who lacks either the mental or physical ability to consent due to a cause enumerated in the statute."

(3) "To be able to freely give an agreement, a person must first possess the cognitive ability to appreciate the nature of the conduct in question, then possess the mental and physical ability to make and to communicate a decision regarding that conduct to the other person."

(4) A person is "incapable of consenting" when she "lack[s] the cognitive ability to appreciate the sexual conduct in question or the physical or mental ability to make and to communicate a decision about whether [she] agree[s] to the conduct."

*Pease*, 74 M.J. at 770. Examining the evidence presented at trial in light of these definitions, the CCA found the evidence factually insufficient to support the sexual assault and abusive sexual contact convictions. The CCA reached this conclusion based on two grounds: the Government failed to prove beyond a reasonable doubt that ITSN SK and IT2 BS were incapable of consenting, and the Government failed to prove beyond a reasonable doubt that Appellee knew or reasonably should have known that they were incapable of consenting.[3] *Id.* at 770–71. As a result, the CCA set aside the

---

[3] We preliminarily address the argument raised in Appellee's brief that the law of the case doctrine requires us to

findings of guilty for the Article 120, UCMJ, offenses and dismissed the Article 120, UCMJ, specifications. *Pease*, 74 M.J. at 771. TJAG then certified the two questions cited above, which we now consider. In doing so, we conduct a de novo review of the issues presented. *United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014) ("This Court reviews questions of law de novo.").

## II. Discussion

### A. Certified Issue I

The first certified issue requires us to determine whether, in the course of conducting its Article 66(c), UCMJ, factual sufficiency review, the CCA had the authority to define statutory terms that were not defined at trial. The Government argues that it was improper for the CCA to consider definitions of legal terms that were not instructed upon by the military judge or considered by the members. Specifically, the Government claims that the CCA's actions constituted consideration of both extra-record matters and a legal theory not presented to the panel. We reject the Government's arguments.

---

leave the CCA's decision undisturbed. Specifically, Appellee asserts that the law of the case doctrine applies because the certified issues submitted by TJAG only address one, rather than both, of the grounds upon which the CCA based its factual insufficiency findings. We have long held that we will not review certified issues when "[p]ractically speaking, any action which we might take with respect to the certified issues would not materially alter the situation presented with respect either to the accused or the Government." *United States v. Gilley*, 14 C.M.A. 226, 226–27, 34 C.M.R. 6, 6–7 (1963); *see also United States v. Morita*, 74 M.J. 116, 123 n.7 (C.A.A.F. 2015). However, that is not the situation presented here. The question raised in the second certified issue about whether the CCA properly defined the phrase "incapable of consenting" is fundamental to *both* of the CCA's factual insufficiency findings. *See Pease*, 74 M.J. at 770. We therefore conclude that Appellee's argument concerning the law of the case doctrine is without merit.

Article 66(c), UCMJ, requires the Courts of Criminal Appeals to conduct a factual sufficiency review by determining whether the evidence at trial proves an appellant's guilt beyond a reasonable doubt. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A. 1987). When conducting this review, the Courts of Criminal Appeals are "limited to the evidence presented at trial," *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007), but their "application of the law to the facts *must … be based on a correct view of the law*." *United States v. Leak*, 61 M.J. 234, 242 (C.A.A.F. 2005) (emphasis added) (citation omitted) (internal quotation marks omitted).

In light of this responsibility, the CCA first needed to determine the correct, applicable law in this case in order to properly conduct its factual sufficiency analysis. The fact that the CCA found it necessary to consider legal definitions not expounded upon at trial does not constitute consideration of matters outside the record or consideration of a new legal theory, but instead represents a permissible act within the CCA's Article 66(c), UCMJ, authority. We therefore answer the first certified issue in the negative.

## B. Certified Issue II

The second certified issue requires us to determine whether the CCA properly defined the statutory term "incapable of consenting." In the course of doing so, we note that we interpret words and phrases used in the UCMJ by examining the ordinary meaning of the language, the context in which the language is used, and the broader statutory context. *See United States v. Schloff*, 74 M.J. 312, 314 (C.A.A.F. 2015); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

The CCA developed its definition of "incapable of consenting" by determining the meaning of three Article 120, UCMJ, terms—"competent," "incompetent," and "freely given agreement." *Pease*, 74 M.J. at 770. The Government challenges the CCA's definitions of all four terms. Therefore, we will examine each one in turn.

First, the CCA defined a "competent person" as "a person who possesses the physical and mental ability to consent."

*Id.* This definition properly incorporates three statutory requirements: (1) the person must be "competent" to consent, Article 120(g)(8)(A), UCMJ; (2) the person cannot consent if she is asleep or unconscious, Article 120(g)(8)(B), UCMJ; and (3) the person is incapable of consenting if she is impaired by a drug, intoxicant, or other substance, or if she is suffering from a mental disease or defect or physical disability, Article 120(b)(3)(A), (B), UCMJ. We therefore agree with the CCA's definition of a "competent person."

Second, the CCA defined an "incompetent" person as one "who lacks either the mental or physical ability to consent due to a cause enumerated in the statute." *Pease*, 74 M.J. at 770. We conclude that the CCA properly defined this term.[4]

Third, the CCA defined a "freely given agreement" as occurring when a person "first possess[es] the cognitive ability to appreciate the nature of the conduct in question, then posess[es] the mental and physical ability to make and to communicate[5] a decision regarding that conduct to the other person." *Id.* We note that the statutory phrase "freely given agreement" reflects the voluntariness aspect of consent. However, the CCA's definition of that phrase may be viewed as not accounting for those situations where a victim has the *ability* to appreciate the conduct, and the mental and physical *ability* to communicate the decision, *but does not articulate* non-consent out of fear or due to some other external compulsion counteracting voluntariness. Nevertheless, we conclude that any imprecision does not constitute reversible error because, as demonstrated immediately below, the CCA's definition of "incapable of consenting," which ultimately is the heart of the matter before us, adequately addresses the concept of voluntariness.

Fourth and finally, using the three definitions developed above, the CCA defined "incapable of consenting" as

---

[4] *See Random House Webster's Unabridged Dictionary* 967 (2d ed. 2001) (defining "incompetent" as "not competent").

[5] The CCA's definitions of "freely given agreement" and "incapable of consenting" both include the phrase "to make and to communicate a decision." As we explain below, we conclude that the CCA's definitions should refer to the ability to make *or* to communicate a decision.

"lack[ing] the cognitive ability to appreciate the sexual conduct in question or [lacking] the physical or mental ability to make and to communicate a decision about whether they agreed to the conduct." *Id.* As is evident, the CCA correctly defined "incapable" as meaning the victim "lacked the ... ability to."[6] In regard to its definition of "consent," the CCA essentially adopted the meaning of that term as provided under Article 120, UCMJ: "[C]onsent means a freely given agreement to the conduct at issue by a competent person." Article 120(g)(8)(A), UCMJ. Thus, we conclude that the CCA's inclusion of the phrase "whether they agreed to the conduct" adequately incorporates into the definition of "incapable of consenting" the voluntariness component of consent, and we further conclude that the definition is correct with the exception of an apparent scrivener's error addressed below.

As evidenced by the second certified question, the Government argues that there are two problems with the CCA's "incapable of consenting" definition. First, the Government asserts that this definition improperly limits prosecutions to only those situations where a putative victim had "an inability to appreciate the conduct" or had an "inability to make and communicate" an agreement. Second, the Government avers that the CCA's definition increases the Government's burden of proof by requiring the victim to be unable both to make a decision and to communicate a decision. We do not find either of these arguments dispositive of the issues before us.

We first note that the CCA's definition of "incapable of consenting" was properly based on the ordinary meaning of the phrase, the context in which it was used, and the broader statutory context. *See Schloff*, 74 M.J. at 314. Moreover, we find no basis to conclude that the CCA's definition was otherwise incorrect, unnecessarily restrictive, or inconsistent with statutory intent. Therefore, the CCA's definition of this phrase withstands legal scrutiny, and arguments

---

[6] *See Merriam-Webster Unabridged Online Dictionary*, http://unabridged.merriam-webster.com/unabridged/incapable (last visited Mar. 8, 2016) (defining "incapable" as "lacking capacity, ability, or qualification for the purpose or end in view").

about whether the definition is broad enough for the Government's prosecutorial purposes are unavailing.

In regard to the Government's second argument, we agree that the CCA's definition of "incapable of consenting" should have stated that a victim must have the ability "to make *or* to communicate a decision" rather than "to make *and* to communicate a decision." *Pease*, 74 M.J. at 770 (emphasis added). However, this apparent scrivener's error did not constitute reversible error in the instant case because the CCA's factual sufficiency analysis for the offenses involving IT2 BS and ITSN SK actually applied the "to make *or* to communicate" standard. For example, the CCA stated it was not persuaded "beyond a reasonable doubt that somewhere in between [ITSN SK kissing Appellee and supporting her own weight while engaging in sexual intercourse with Appellee] she had become manifestly unaware of what was happening or unable to make *or* to communicate decisions." *Id.* at 771 (emphasis added). The CCA also indicated that it applied this "to make *or* to communicate" standard when analyzing factual sufficiency for the offenses involving IT2 BS because immediately after the ITSN SK analysis, the CCA found "[s]imilar concerns apply to IT2 BS." *Id.* We therefore conclude that although the Government is correct that the "to make or to communicate" standard is the proper one, the Government is incorrect in arguing that the CCA actually used the "to make *and* to communicate" standard. Therefore, no reversible error resulted in the instant case.

For the reasons cited above, we answer the second certified issue in the negative.

### III. Decision

We conclude that the CCA acted within its Article 66(c), UCMJ, authority to define statutory terms before conducting its factual sufficiency review, and that in the course of conducting its factual sufficiency analysis, the CCA applied the proper definition of "incapable of consenting." The decision of the United States Navy-Marine Corps Court of Criminal Appeals is therefore affirmed.