# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, LEVIN,[1] and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant RICARDO E. CHINCHILLA**
**United States Army, Appellant**

ARMY 20150266

Headquarters, United States Army Maneuver Center of Excellence
Charles A. Kuhfahl, Jr., Military Judge (arraignment)
Christopher D. Carrier, Military Judge (trial)
Colonel Charles C. Poché, Staff Judge Advocate

For Appellant: Captain Joshua G. Grubaugh, JA; Sean A. Marvin, Esq.; David P. Sheldon, Esq. (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie, III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).

18 August 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LEVIN, Judge:

In this appeal, we are asked to decide whether there was sufficient evidence to convict appellant of a sexual assault involving a fellow soldier, passed out on her bed, after he witnessed her consume no fewer than eight alcoholic drinks only hours earlier. We find the evidence legally and factually sufficient to support the conviction.

A general court-martial panel consisting of commissioned and non-commissioned officers convicted appellant, contrary to his pleas, of one specification of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. Appellant was acquitted of two specifications also alleging sexual assault arising out of the same incident. The

---

[1] Judge LEVIN took final action while on active duty.

convening authority approved the adjudged sentence to a dishonorable discharge, confinement for two years, and reduction to Private E1.

We review this case under Article 66, UCMJ. Appellant raises three errors, one of which merits discussion, but no relief.[2]

## BACKGROUND

To celebrate America's birthday, several soldiers arranged to meet in Myrtle Beach, South Carolina, over the 4 July 2014 weekend. Many had never met one another before, to include appellant and his victim, SFC KM. Rather than gorging on hot dogs and apple pie, the celebration involved drinking to excess. Over a course of several hours, appellant intermittently observed SFC KM consume no fewer than two Jell-O shots,[3] two Fireballs,[4] two mixed drinks and two beers. A conservative estimate suggests that SFC KM drank at least 13 alcoholic drinks that evening. Based on the testimony of several witnesses, there was no question that SFC KM was drunk by the time she passed out on a bed in a hotel suite she shared that night with eight other soldiers and two civilians.[5]

Within minutes after others had turned out the lights and gone to bed, appellant crawled into SFC KM's bed, removed her clothing, and engaged in sexual

---

[2] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant personally asserts ineffective assistance of counsel in that his counsel failed to cross-examine the victim on statements she may have made to a law enforcement official prior to trial. This matter does not warrant relief.

[3] An alcoholic beverage consisting of liquor incorporated into sweetened gelatin dessert and chilled in a small container. *English Oxford Living Dictionaries*, Oxford University Press, *available at* https://en.oxforddictionaries.com/definition/us/jello_shot (last visited 9 Aug. 2017).

[4] Although "Fireball" was not defined, it is clear in context that the reference is to an alcoholic drink.

[5] Three witnesses, in addition to SFC KM herself, described her as "drunk," "trashed," and "pretty hammered." Significantly, appellant also testified that SFC KM was "drunk," before catching himself and stating "well, not drunk, but drinking like everyone else, sir." The record demonstrates that everyone else was drinking heavily.

intercourse.[6] Sergeant First Class KM realized what was happening, screamed, and pushed away appellant, who then scurried out of the room to a hotel nearby.[7] Sergeant First Class KM, meanwhile, began crying and hyperventilating.

On 5 July 2014, at approximately 1000, SFC KM reported the assault to the Myrtle Beach Police Department and thereafter underwent an intrusive Sexual Assault Forensic Exam. Later, SFC KM made a statement to the United States Army Criminal Investigation Command (CID).

Appellant also made a statement to CID and testified in his own defense at trial. According to appellant, SFC KM kicked him twice while he lay on the floor next to her bed, and he responded by saying, "You know it is Rick. What do you want? Do you want to hook up or something?" Appellant further testified that SFC KM then "gave [him] a look with a nod[,]" which he managed to see in the darkened room. In response to this supposed look, appellant testified that he told SFC KM that "you need to scoot over and make room for me in the bed then." In the minutes that followed, to ensure that SFC KM "wanted to do" this, appellant testified that he then told SFC KM, "Hey, if you want to do this, you have to put me inside of you." Although several witnesses testified they were in the hotel suite that night, just a few feet away from appellant and still awake, no one heard these purported statements.

## LAW AND DISCUSSION

We conduct a de novo review of legal and factual sufficiency. *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F.2002). Article 66(c), UCMJ, requires us to conduct a plenary review of the record and "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866 (2012). A complete Article 66, UCMJ, review is a "substantial right" of an accused. *United States v. Jenkins*, 60 M.J. 27, 30 (C.A.A.F. 2004). As our superior court has instructed, we have an "affirmative obligation to ensure that the findings and sentence in each such case are 'correct in law and fact . . . and should be approved.'" *United States v. Miller*, 62 M.J. 471, 472 (C.A.A.F. 2006) (alteration in original) (quoting Article 66(c), UCMJ).

---

[6] Based on witness testimony, these events occurred sometime between 0200 and 0300 on 5 July 2014.

[7] While appellant testified that the interaction with his victim lasted approximately 15 minutes, several other witnesses testified that appellant's physical contact with SFC KM lasted between two and five minutes.

CHINCHILLA—ARMY 20150266

The test for factual sufficiency "is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," the court is "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 MJ 324, 325 (CMA 1987).

The test for legal sufficiency requires courts to review the evidence in the light most favorable to the government. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *Turner*, 25 MJ 324 (CMA 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

Here, appellant was convicted of a violation of Article 120(b)(3), UCMJ, which provides that it is a sexual assault to "commit [ ] a sexual act upon another person when the other person is incapable of consenting to the sexual act due to— (A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person."

Viewed as a whole, we hold that the evidence is legally sufficient for a rational factfinder to find beyond a reasonable doubt that appellant committed the charged offense. Although our discussion below is focused on the legal sufficiency of the evidence, we also find the evidence to be factually sufficient.

### 1. Incapacity to Consent to Sex because of Impairment by Alcohol

"Proving incapacity to consent to a sexual act because of impairment from alcohol requires more than proving intoxication." *United States v. Clugston*, 2017 LEXIS 43, *6 (N.M. Ct. Crim. App. 31 Jan. 2017) (citing *United States v. Pease*, 74 M.J. 763, 770 (N.M. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 180 (C.A.A.F. 2016)). In *Clugston*, our sister court relied on its previous assessment in *Pease* pointing to the definition of consent in the statute: "'a freely given agreement to the conduct at issue by a competent person . . . .'" *Id.* (quoting Art. 120(g)(8), UCMJ). The court reasoned:

> A competent person has the "physical and mental ability
> to consent," while an incompetent person "lacks either the
> mental or physical ability to consent." *Id.* The culprit
> may be alcohol or another "cause enumerated in the
> statute." *Id.* Lacking the capability to consent to sexual
> conduct means "lack[ing] the cognitive ability to
> appreciate the sexual conduct in question or the physical
> or mental ability to make or to communicate a decision
> about whether they agreed to the conduct." *Id.* In other
> words, the focus of the evidentiary inquiry is the alleged
> victim's awareness or ignorance of the sexual conduct

4

> pending or in progress and capacity or incapacity to
> consent to or oppose it, either verbally or physically.

*Id.* at *6-7 (quoting *Pease*, 74 M.J. at 770).

The facts of this case are similar to those in *Clugston*, and we agree with our sister court's reasoning in that case. In *Clugston*, there was ample evidence that the victim drank alcohol to the point of intoxication, but that her impairment did not render her incapable of consenting to a sexual act while she was awake. *Id.* at *7. The victim's impairment due to intoxication, however, prohibited the victim from being awakened as Clugston removed her clothes and penetrated her, thus rendering Clugston's act a sexual assault. *Id.* at *11.

### 2. *Sergeant First Class KM was Incapable of Consenting Because of her Impairment by Alcohol*

Here, there was evidence that SFC KM maintained clear, largely intact memories of that night, up until she climbed into bed and passed out. She and others left the hotel and began drinking shortly after 2100. Sergeant First Class KM consumed at least thirteen alcoholic drinks and possibly as many as nineteen. Although she was acting as a "funny drunk" and did not remember the cab ride back to the hotel, SFC KM managed to return to the hotel suite and participate in a coherent conversation, during which she made a reasonable assessment of the situation. She remembered telling her male friend, SSG PC, that she wanted him to sleep in the bed with her, fully clothed, because she did not trust appellant, as a result of interactions earlier that evening. Sergeant First Class KM purposely did not undress, leaving on a black skirt and a body suit. Thereafter, SFC KM was asleep.

Shortly after everyone had gone to bed, SSG PC got up from the bed he had been sharing with SFC KM and went to the bathroom. He was gone for approximately three minutes. Upon his return, SSG PC noticed that the bed covers had shifted, prompting him to say, "Hey, leave me some blanket." When she heard SSG PC's voice, SFC KM immediately felt a penis penetrating her vagina, her arms by her side. She then realized appellant was on top of her, and she began screaming, kicking and "freaking out." Staff Sergeant PC turned on the lights, also saw SFC KM pushing appellant off of her, and started yelling at appellant. After appellant ran away, SFC KM began rocking back and forth in bed, covering herself with a blanket. Sergeant First Class KM described still feeling "drunk" at this point but remembered everything clearly. Several witnesses testified that SFC KM was able to articulate what had happened to her once she calmed down.

While the evidence fails to establish that SFC KM was incapacitated due to alcohol at certain times that night, it is sufficient to find that SFC KM's impairment

caused her to remain asleep long after she should have awakened to appellant's sexual advances.  As appellant committed the sexual act, SFC KM remained incapable of consenting due to that impairment.

Just as in *Clugston*, before considering the combined effects of sleep and alcohol, we must address the members' decision to acquit appellant of committing a sexual act upon SFC KM while she slept, in violation of Art. 120(b)(2), UCMJ.  The government charged three provisions of the sexual assault statute for a single incident, presumably allowing for contingencies of proof.  In his closing argument, trial counsel told the members, "you can find [appellant] guilty of all three of these or you can find him guilty of just one or just two.  The government does not want you to concern yourself with whether that means somehow that the maximum punishment is going to be increased.  Moving towards sentencing, there are methods by which these can be combined to ensure that that does not occur."  For reasons known only to the members, they found appellant guilty of a sexual act upon SFC KM when she was incapable of consenting due to impairment by an intoxicant, but not guilty of committing a sexual act upon SFC while she was asleep.

Our review of the legal sufficiency of the evidence "should be independent of the jury's determination that evidence on another count was insufficient." *United States v. Powell*, 469 U.S. 57, 67 (1984).  We need not set aside appellant's conviction "merely because the verdicts cannot rationally be reconciled." *Id.* at 69.  Thus, we are not bound from considering the evidence supporting that specification in support of the remaining specification of sexual assault. *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014).  Therefore, we may take into account evidence that SFC KM was asleep at certain points in analyzing evidence that she was incapacitated because of impairment by alcohol.

The evidence shows that SFC KM had fallen asleep wearing all of her clothes. While SFC KM slept, appellant climbed into her bed and removed her clothing. Sergeant First Class KM did not notice.  Despite all the manipulation of SFC KM's body that was required to remove her clothing, it was not until after another soldier in the room spoke that SFC KM realized what was happening and immediately began screaming.

Sergeant First Class KM's failure to wake while appellant undressed her is consistent with sleep deepened and prolonged by alcohol.  On cross-examination, a defense expert witness testified that "studies [show] that the first half of the night alcohol is seen to cause someone to sleep harder . . . and [make him or her] more difficult to arouse."

One would reasonably expect the sensation of snug clothing either being pulled down past one's waist, knees, and legs or being pulled up and over one's arms and head to wake an ordinary sleeper.  We conclude that alcohol dulled SFC KM's

senses beyond the normal effects of sleep and precluded her awareness of appellant's actions leading imminently to sexual conduct. Unable to appreciate what was happening to her, she was also unable to resist verbally or physically until she heard the sound of another soldier's voice. Appellant, who had spent hours observing SFC KM drink that evening and pass out on the bed, knew or should have known that she remained asleep as he removed her clothing. Her consumption of alcohol, an intoxicant, was the reason. Likewise, appellant knew or should have known that SFC KM's consumption of alcohol had incapacitated her during the sexual act. Thus, we find the evidence to be legally sufficient.

After making allowances for not having observed the witnesses, we are convinced beyond a reasonable doubt of appellant's guilt. We find appellant's self-serving version of the encounter not credible. Two witnesses testified that upon returning to the hotel suite after celebrating, they had offered to pay for a cab so that appellant could go to another hotel. Appellant declined their offer and chose to sleep instead on the floor next to SFC KM's bed. Although appellant denied this conversation took place, we find the objective witnesses to be credible and find further that appellant's declination of the offer fits with the evidence that he laid in wait to take advantage of SFC KM's impaired state at the first opportunity. That opportunity presented itself when SSG PC went to the bathroom. According to SSG PC, appellant was still on the floor when he got out of bed. During the three minutes SSG PC was out of the room, appellant crawled into bed, removed SFC KM's clothing and engaged in intercourse. Although appellant testified the interaction lasted approximately fifteen minutes, several witnesses testified that appellant's contact with SFC KM lasted between two to five minutes.[8]

Finally, as to appellant's testimony that he sought clarity and permission from SFC KM prior to engaging in sexual contact with her, we find no reason why others in the room – awake and only a few feet away – would not have heard the exchanges, unless, of course, they did not occur.

The idea that a defendant, or accused in the military context, testifies at his own peril is best summed up by the United States Court of Appeals for the Eleventh Circuit in *United States v. Williams*, 390 F. 3d 1319 (11th Cir. 2004):

> "Defendants in criminal trials are not obliged to testify. And a defendant who chooses to present a defense runs a

---

[8] Although a number of witnesses testified contrary to SSG PC and claimed that appellant was already in bed prior to SSG PC's use of the bathroom, these witnesses, all of whom acknowledged they were intoxicated, contradicted each other and appellant in several respects. In any event, the inconsistent testimony on this point only goes to whether appellant planned out his assault and not whether SFC KM was incapable of consenting to his sexual act because of impairment by alcohol.

> substantial risk of bolstering the Government's case." *United States v. Bennett*, 848 F.2d 1134, 1139 (11th Cir. 1988). "Most important, a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). "By 'substantive' we mean evidence adduced for the purpose of proving a fact in issue as opposed to evidence given for the purpose of discrediting a witness (i.e., showing that he is unworthy of belief), or of corroborating his testimony." *Id.* This Circuit has said that "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *Id.* (citations omitted).

*Id.* at 1325. "Where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in [his] own defense, the Defendant's testimony, denying guilt, may establish, by itself, elements of the offense." *Id.* at 1326 (citation omitted). Of special note to appellant's situation, the *Williams* court concluded that "[t]his rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge." *Id.* at 1326 (internal quotation marks and citation omitted).

After evaluating the evidence, we ourselves are convinced beyond a reasonable doubt that SFC KM remained passed out and asleep through appellant's removal of her clothing, which would reasonably be expected to wake the sober sleeper, and was incapable of consenting to appellant's sexual act because of impairment by alcohol.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8