# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32787**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Michael A. EDWARDS**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 April 2025

————————————

*Military Judge*: Tyler B. Musselman.

*Sentence*: Sentence adjudged on 29 February 2024 by GCM convened at Robins Air Force Base, Georgia. Sentence entered by military judge on 15 July 2024: Bad-conduct discharge, confinement for 60 days, and reduction to E-1.

*For Appellant*: Captain Joyclin N. Webster, USAF; Catherine M. Cherkasky, Esquire.

*For Appellee*: Major Regina M.B. Henenlotter, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and PERCLE, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Judge DOUGLAS and Judge PERCLE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Senior Judge:

A special court-martial consisting of a military judge convicted Appellant, contrary to his pleas, of three specifications of domestic violence against JH in violation of Article 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928b.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 60 days, and reduction to the grade of E-1.[3] The convening authority took no action on the findings or the sentence.

Appellant raised three issues on appeal which we have rephrased: (1) whether Appellant's convictions are legally and factually sufficient; (2) whether the military judge abused his discretion by excluding extrinsic evidence of prior inconsistent statements made by the victim; and (3) whether Appellant's sentence is inappropriately severe.

We have carefully considered issue (2) and find it does not require discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Finding no error that materially prejudiced Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

Appellant met JH on an online dating site in early 2021. At that time, JH was living in Augusta, Georgia, with her teenage son. After dating for several months, Appellant and JH discussed living together. In June 2021, Appellant purchased a home in Macon, Georgia, and shortly thereafter, JH and her 15-year-old son moved in with him. The couple continued dating for another year. Their romantic relationship ended in June 2022. Despite the break-up, JH and her son continued to live in Appellant's house. After the breakup, JH had her own bedroom.

As JH described at trial, in early June of 2023, Appellant began to impose rules on her. In particular, Appellant informed JH that she would not be allowed to leave the shared residence after 2200, and, if she was to return to the residence after 0000, she would not be allowed into the house until "a decent time in the morning." Appellant threatened to change the locks if JH broke the rules. As a result of these rules, JH made plans to move out of Appellant's

---

[1] Unless otherwise stated, all references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2024 ed.).

[2] Appellant was acquitted of one specification of obstruction of justice in violation of Article 131b, UCMJ, 10 U.S.C. § 931b.

[3] Appellant was sentenced to 60 days confinement for each specification, with confinement to run concurrently.

residence. She communicated her intent to move out to Appellant, but did not give him an actual date because she did not want him to know when she was leaving.

On the morning of 4 June 2023, Appellant came into JH's bedroom and insisted that she give him the keys to the house. Appellant was upset because JH had not returned to the house until after 0200 that morning and informed JH she was not allowed to leave the house anymore "without his permission." Appellant then followed JH as she went to retrieve the keys from her purse in the living room. Once she had her keys the two of them engaged in a "tug of war" for the keys.

During the ensuing struggle, Appellant grabbed JH's arm and attempted to take the keys out of her hand, in the process causing JH to fall into a dresser. JH got up and attempted to leave the living room, but Appellant grabbed her and put her in a "chokehold or headlock." JH's face and head were pressed into Appellant's chest. JH testified that the more she struggled to get away, the harder Appellant "would press" her face into his chest. JH described that she had difficulty breathing and panicked thinking Appellant was going to kill her. In an attempt to get away, JH bit Appellant in the chest. In response, Appellant let go for a split second, but then quickly grabbed JH by the hair and punched her on the left side of her face with his hand. JH grabbed her phone that Appellant knocked out of her hand earlier, fled the living room, and locked herself in her bedroom.

During Appellant's court-martial the Government admitted photographs taken by the Air Force Office of Special Investigations (OSI). The photographs were taken by the investigating agent approximately 24 hours after the assault. A second set of photographs were taken about 48 hours after the assault. The photographs detailed a large bruise on the left side of JH's face, and bruising on JH's neck, arm, wrist, ribs and thigh. Special Agent (SA) AC testified that the bruises depicted in the photographs were both darker in color and larger 48 hours after the assault as compared to the photos taken 24 hours after the assault. SA AC also discussed a third set of photographs that were taken approximately 1 week after the assault wherein the size and color of the bruises on JH's face, neck and body had started to diminish. Finally, SA AC also discussed photographs taken of Appellant's chest, which showed a human bite mark.

The Government also presented the expert testimony of DH, a forensic nurse who reviewed the photographs taken by OSI. She testified that photos were consistent with the assault as described by JH. She also testified regarding the bite mark on Appellant's chest. In particular, she described the bite mark as "superficial" and affirmed that when a victim bites in "a defensive

3

posture as a way to get away from somebody," the bites are "[g]enerally, more superficial."

After hearing the evidence and the arguments, the military judge found Appellant guilty of three specifications of domestic violence. Specifically, Appellant was convicted of grabbing JH, causing her to fall into the furniture (Specification 1 of Charge I);[4] grabbing JH and wrapping his arm around her neck (Specification 2 of Charge I); and grabbing JH by the hair and punching her in the face (Specification 3 of Charge I).

## II. DISCUSSION

### A. Legal and Factual Sufficiency

In his appeal, Appellant challenges the legal and factual sufficiency of his convictions. As to legal sufficiency, Appellant argues that he and JH had ceased being romantically involved at the time of the offense and therefore the Government failed to prove that JH was his intimate partner as defined in Article 128b, UCMJ. Additionally, Appellant claims that he punched JH in self-defense after she bit him on the chest. As to factual sufficiency, Appellant generally challenges the believability of JH's testimony. We disagree with Appellant's arguments and find the convictions legally and factually sufficient.

#### 1. Law

We review issues of legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). We review questions of factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency in proof. *United States v. Harvey*, 85 M.J. 127, 129 (C.A.A.F. 2024) (citing Article 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B)). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a

---

[4] For Specification 1 of Charge I, the military judge found Appellant guilty by excepting the words "and pushing her."

conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, __ M.J.__, No. 23-0210, 2024 CAAF LEXIS 590, at *9 (C.A.A.F. 7 Oct. 2024) (internal quotation marks and citation omitted).

The National Defense Authorization Act for Fiscal Year 2021 significantly changed how service Courts of Criminal Appeals (CCAs) conduct factual sufficiency reviews. Pub. L. No. 116-283, § 542(b)(1)(B), (c), 134 Stat. 3388, 3611–12 (1 Jan. 2021). Previously, the test for factual sufficiency required the court, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, to be convinced of the appellant's guilt beyond a reasonable doubt before it could affirm a finding. *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). "In conducting this unique appellate role, we [took] 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (second alteration in original) (quoting *Washington*, 57 M.J. at 399).

The current version of Article 66(d)(1)(B), UCMJ, FACTUAL SUFFICIENCY REVIEW, states:

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.

> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

> (II) appropriate deference to findings of fact entered into the record by the military judge.

> (iii) If, as a result of the review conducted under clause (ii), *the Court is clearly convinced that the finding of guilty was against the weight of the evidence*, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B) (emphasis added).

"[T]he requirement of 'appropriate deference' when a CCA 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *Harvey*, 85 M.J. at 130 (second and third alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.*

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at 131 (internal quotation marks omitted).

For this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at 132. First, we must decide that evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Id.* Second, we "must be clearly convinced of the correctness of this decision." *Id.*

Military jurisprudence has long held that "direct evidence of a crime or its elements is not required for a finding of guilty; circumstantial evidence may suffice." *United States v. Hart*, 25 M.J. 143, 147 (C.M.A. 1987) (citation omitted).

To obtain a conviction for domestic violence under Article 128b, UCMJ, the Government was required to prove beyond a reasonable doubt: (1) that the accused committed a violent offense; and (2) that JH was Appellant's intimate partner. *See Manual for Courts-Martial, United States* (2024 ed.) (*MCM*), pt. IV, ¶ 78a.b.(1).

The term "intimate partner" means either "one's former spouse, a person with whom one shares a child in common, or a person with whom one cohabits or with whom one has cohabited as a spouse;" or "a person with whom one has been in a social relationship of a romantic or intimate nature, as determined by the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship." *MCM*, pt. IV, ¶ 78a.c.(3).[5]

A "violent offense" includes, *inter alia*, a violation of Article 128, UCMJ, 10 U.S.C. § 928. *See MCM,* pt. IV, ¶ 78a.c.(1)(i). This required that the Government in this case also had to prove the elements of assault consummated by a battery under Article 128, UCMJ, to convict Appellant of domestic violence. To accomplish this the Government was required to prove three elements beyond a reasonable doubt: (1) that the accused did bodily harm to a certain person;

---

[5] The Presidential definition of "intimate partner" in place at the time of the offenses was included in the *2022 Amendments to the Manual for Courts-Martial, United States.* Exec. Order No. 14,062, 87 Fed. Reg. 4763, 4780 (31 Jan. 2022).

(2) that the bodily harm was done unlawfully; and (3) that the bodily harm was done with force or violence. *See MCM*, pt. IV, ¶ 77.b.(2).

"Bodily harm" means an offensive touching of another, however slight. *Id.* at ¶ 77.c.(1)(a).

This court "interpret[s] words and phrases used in the UCMJ by examining the ordinary meaning of the language, the context in which the language is used, and the broader statutory context." *United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016) (citations omitted). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997). This court's "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* (citations omitted).

Self-defense is an affirmative defense to the offense of assault consummated by a battery and has three elements. For self-defense to apply,

> First, the accused must have apprehended, on reasonable grounds, that bodily harm was about to be inflicted on him; second, the accused must have believed that the force he used was necessary for protection against bodily harm; and, third, the force used by the accused must have been "less than force reasonably likely to produce death or grievous bodily harm."

*United States v. Turner*, No. ACM 39706, 2020 CCA LEXIS 428, at *21–22 (A.F. Ct. Crim. App. 25 Nov. 2020) (unpub. op.) (quoting R.C.M. 916(e)(3)), *aff'd*, 81 M.J. 451 (C.A.A.F. 2021). The right to self-defense is lost "if the accused was an aggressor, engaged in mutual combat, or provoked the attack which gave rise to the apprehension, unless the accused had withdrawn in good faith after the aggression, combat, or provocation and before the offense alleged occurred." R.C.M. 916(e)(4). However, an accused who starts an affray is entitled to use reasonable force in self-defense to defend against an opponent who escalates the level of the conflict. *United States v. Dearing*, 63 M.J. 478, 484 n.24 (C.A.A.F. 2006) (citation omitted); *Turner*, unpub. op. at *22 (citation omitted).

Failure to retreat, when retreat is possible, does not deprive a person of the right to self-defense. R.C.M. 916(e)(4), Discussion. The availability of avenues of retreat is one factor that may be considered in addressing the reasonableness of a person's apprehension of bodily harm and the sincerity of the person's belief that the force used was necessary for self-protection. *Id*. Once raised, the prosecution has the burden of proving beyond a reasonable doubt that the defense does not exist. R.C.M. 916(b)(1).

This court is authorized to affirm a lesser included offense (LIO) thereto. Article 66(f)(1)(A)(i), UCMJ, 10 U.S.C. § 866(f)(1)(A)(i). In fact, this court may "narrow the scope of an appellant's conviction to that conduct it deems legally and factually sufficient." *United States v. English*, 79 M.J. 116, 120 (C.A.A.F. 2019) (footnote and citations omitted). An offense is a lesser included offense when it is "necessarily included in the charged offense." *United States v. Armstrong,* 77 M.J. 465, 469 (C.A.A.F. 2018).

In *Armstrong,* our superior court explained:

> The "elements test" determines whether an offense is "necessarily included in the offense charged" under Article 79, UCMJ[, 10 U.S.C. § 879]. We have applied the elements test in two ways. The first way is by comparing the statutory definitions of the two offenses. An offense is a lesser included offense of the charged offense if each of its elements is necessarily also an element of the charged offense.

77 M.J. at 469–70 (citations omitted).

**2. Analysis**

We find the Government presented convincing evidence of Appellant's guilt of each specification beyond a reasonable doubt. Relevant to all specifications, JH's testimony established that she and Appellant were romantically involved with each other and lived together as a couple for approximately one year. After their romantic relationship ended, they continued to cohabitate together leading up to and until the charged misconduct. JH's testimony clearly detailed the violent assaults that took place at their shared residence approximately one year after they stopped dating. Specifically, JH testified they were arguing about what time she returned to the residence the night prior and that a struggle ensued as Appellant attempted to take her house keys. It was during the struggle that Appellant grabbed JH by the arm, causing her to fall onto a piece of furniture forming the basis for Appellant's conviction to Specification 1 of Charge I. JH then described that, after she stood back up, Appellant grabbed her around the neck and placed her in a "headlock" where she feared for her life, forming the basis for his conviction to Specification 2 of Charge I. JH explained that Appellant only released her from the headlock when she bit him on his chest. Finally, JH provided that after Appellant released her from the headlock, he quickly grabbed her by the hair and punched her on the left side of her face, forming the basis for his conviction to Specification 3 of Charge I. JH's testimony for each specification was supported by photographic evidence of the injuries to her face, neck, ribs, arm, wrist, and thigh. Her testimony was further supported by the testimony of SA AC and by the expert testimony from a forensic nurse examiner, DH.

We are also not persuaded by Appellant's argument that the Government failed to prove that JH was his intimate partner because he and JH were not romantically involved at the time of the offense. As we noted *infra,* "intimate partner" is specifically defined by the President in his explanation section as contained in the *MCM*, pt. IV, ¶ 78a.c.(3), pertaining to Article 128b, UCMJ. That definition lists two broad categories of relationships that qualify as intimate partner. These include: "a person . . . with whom one has cohabited as a spouse" or "a person with whom one has been in a social relationship of a romantic or intimate nature, as determined by the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship." *MCM*, pt. IV, ¶ 78a.c.(3). Here, JH qualifies as Appellant's intimate partner under both categories. First, JH is "a person with whom [Appellant] cohabited," and second JH is "a person with whom [Appellant] *has been* in a social relationship of a romantic or intimate nature, as determined by the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship." *Id.* (emphasis added).

Under the plain language of the presidentially provided definition, there is no question that Appellant and JH were cohabitating at the time of the offense, and therefore JH would qualify as an intimate partner as defined by Article 128b, UCMJ. Moreover, JH would also qualify as an intimate partner because she "ha[d] been in a social relationship of a romantic or intimate nature" with Appellant for over a year prior to their break-up. We see no support for Appellant's argument that JH and Appellant had to be in a romantic relationship at the time of the offense as JH's testimony clearly established that she and Appellant were involved in a romantic relationship that included living together as a couple. Her testimony also established that after the break-up she and Appellant continued to cohabitate, have daily interactions with one another and that Appellant attempted to control, to some degree, her actions. Therefore, we conclude that JH meets the definition of intimate partner under Article 128b, UCMJ.

In conducting both our factual and legal sufficiency review, we also specifically considered the affirmative defense of self-defense. We are convinced that Appellant did not act in self-defense while violently assaulting JH for any of the specifications of which he was convicted. Here, if the trier of fact—the military judge—gave absolute credit to JH's testimony, Appellant would have no viable self-defense claim, as he was the initial aggressor. Moreover, while JH admitted to biting Appellant on the chest, her actions were in response to being held around the neck in a headlock by Appellant in a way that made her fear for her life. We find that a rational trier of fact could conclude that JH was fighting back—that is, exercising her own self-defense rights—rather than initiating an attack or escalating the level of the conflict. After providing the

appropriate deference, we find these conclusions are consistent with the evidence established at trial. Therefore, we find that Appellant did not act in self-defense.

In conclusion, viewing the evidence in the light most favorable to the Government, we find that a rational trier of fact could have found the essential elements of all three specifications beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. Therefore, we find Appellant's convictions legally sufficient. As to the factual sufficiency of the specifications, we assume without deciding that Appellant properly made a request for a factual sufficiency review by asserting a specific showing of a deficiency of proof as required under Article 66(d)(1)(B)(i), UCMJ. However, having given appropriate deference to the fact that the military judge saw and heard the witnesses and other evidence, we are not clearly convinced that Appellant's convictions are against the weight of the evidence. Thus, the findings are factually sufficient as well.

Finally, we note that even if we were to agree with Appellant that JH was not Appellant's intimate partner as defined by Article 128b, UCMJ, we would still affirm Appellant's convictions for all three specifications to the lesser included offense of assault consummated by a battery under Article 128, UCMJ. *See* Article 66(f)(1)(A)(i), UCMJ, (where a Court of Criminal Appeals "may affirm any lesser included offense"). Furthermore, applying the *Winckelmann* factors we would also find that we could reassess Appellant's sentence, and would reassess Appellant's sentence to same sentence adjudged and entered by the military judge in this case—bad-conduct discharge, 60 days confinement for each of the three specifications individually to run concurrently, and reduction to the grade of E-1. *See United States v. Winckelmann,* 73 M.J. 11, 15–16 (C.A.A.F. 2013) (citations omitted).

## B. Sentence Appropriateness

Appellant contends that his sentence is inappropriately severe. Specifically, Appellant argues that the bad-conduct discharge is "inappropriately severe given [his] service record and the circumstances of the case." We disagree.

### 1. Additional Background

During sentencing the Government presented Appellant's personal data sheet and enlisted performance reports. This evidence established that Appellant had almost 15 years of service at the time of his court-martial, with seven overseas tours, and that his duty performance was always above average. The Government also presented testimony from AG, who was a friend and work colleague of JH. AG testified concerning her recollection of seeing bruising on JH's face and body for about ten days following the assault. She also testified regarding the difficulties JH had at work immediately after the incident, which

included moving slowly and being visibly in pain. Finally, the Government presented testimony from JH's adult daughter, AH. AH testified concerning the changes she observed in her mother's personality following the assault. In general, she described JH as "a bit more frightened and shaken up since the incident."

Following the Government's sentencing case, JH provided a written unsworn victim impact statement that discussed how Appellant's crimes directly impacted her life. That statement was admitted without objection as a court exhibit.

The Defense offered four character letters, a three-page document detailing Appellant's certificates and awards, a five-page document containing pictures of Appellant, and Appellant's written unsworn statement. Appellant also provided an oral unsworn statement during presentencing proceedings. In his unsworn statements Appellant apologized for his actions, discussed his family and upbringing, and highlighted the extent of abuse he suffered as a child.

### 2. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such . . . sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine [ ], on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ (*Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*)).[6] "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted).

Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

When conducting our review, we "must consider the appropriateness of each segment of a segmented sentence and the appropriateness of the sentence as a whole." *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

---

[6] While Appellant was sentenced in February 2024, the findings of guilty are for offenses before 27 December 2023. *See* National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(b)(1)(A), 134 Stat. 3388, 3611–12 (2021); *Manual for Courts-Martial, United States* (2023 ed.), Preface.

**3. Analysis**

Having considered the nature and seriousness of Appellant's misconduct, and all matters contained in the court-martial record, including his lengthy service record, all matters submitted in mitigation, and his written and oral unsworn statements, we conclude the sentence is not inappropriately severe. Here, Appellant was convicted of violent assaults against JH. Appellant's criminal behavior resulted in numerous physical injuries to JH's head and body, which were well documented by law enforcement and witnessed by her friends, co-workers, and family. These injuries were visible on her body for weeks following the assault. Due to the serious nature of Appellant's crimes, we find that each segment of Appellant's sentence, as well as the sentence as a whole, is appropriate punishment for Appellant's crimes. Therefore, we conclude that Appellant is not entitled to sentence relief.

## III. CONCLUSION

As entered, the findings are correct in law and fact, Article 66(d), UCMJ. In addition, the sentence, as entered, is correct in law and fact, Article 66(d), UCMJ (2019 *MCM*), and no error materially prejudicial to the substantial rights of Appellant occurred, Article 59(a), UCMJ, 10 U.S.C. § 859(a). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court