*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and KORN
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Marvin B. GUZMAN**
Chief Hospital Corpsman (E-7), U.S. Navy
*Appellant*

**No. 202200266**

_____

Decided: 19 December 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Ryan J. Stormer (Arraignment)
Andrea K. Lockhart (Trial)

Sentence adjudged 24 June 2022 by a general court-martial tried at Naval Base San Diego, California. Sentence in the Entry of Judgment: no punishment.

For Appellant:
*Lieutenant Benjamin M. Cook, JAGC, USN*

For Appellee:
*Captain Jacob R. Carmin, USMC* (argued and on brief)
*Lieutenant K. Matthew Parker, JAGC, USN* (on brief)

Judge KORN delivered the opinion of the Court, in which Chief Judge DALY and Senior Judge HARRELL joined.

---

**PUBLISHED OPINION OF THE COURT**

---

KORN, Judge:

A general court-martial composed of members with enlisted representation convicted Appellant of one specification of violation of a lawful general order, one specification of abuse of position as a military recruiter, and one specification of obstructing justice, in violation of Articles 92, 93a, and 131b, Uniform Code of Military Justice (UCMJ).[1] After findings, the military judge conditionally dismissed the Article 92 charge due to an unreasonable multiplication of charges and subsequently sentenced Appellant to no punishment.

Appellant raises four assignments of error (AOE):

**I. Is the evidence supporting charge III factually insufficient to sustain a conviction for obstruction of justice where the accused did not have an intent to obstruct an ongoing investigation?**

**II. Is Appellant's conviction for obstruction of justice legally insufficient where the government argued uncharged theories of criminal liability and the military judge instructed the members on those uncharged theories?**

**III. Was the Defense's failure to request the appropriate instruction for the intent element of obstruction of justice forfeiture, and if so, was the military judge's failure to provide the proper instruction plain error?**

**IV. If this Court finds waiver, was trial defense counsel ineffective for failing to request the appropriate instruction for obstruction of justice's intent element?**

---

[1] 10 U.S.C. §§ 892, 893a, 931b.

## I. BACKGROUND

Appellant was a Hospital Corpsman by rate and a Navy recruiter by assignment. While serving as a recruiter, he engaged in a romantic and sexual relationship with Ms. Hotel, a registered nurse he was actively assisting through the process of pursuing a Navy commission. Their relationship ultimately ended disharmoniously, with Ms. Hotel accusing Appellant of abandoning her while she was pregnant with his child, and Appellant reporting to his command that Ms. Hotel was harassing him and falsely claiming that he was the father of her unborn child.

Unsurprisingly, once Appellant reported that an applicant for Naval service was claiming she was pregnant with his child, his command opened an investigation into Appellant's behavior. The investigating officer (IO) attempted to interview Ms. Hotel, but she repeatedly told the IO she was not ready to be interviewed. While the interview was pending, Appellant communicated with Ms. Hotel, imploring her not to speak with the IO and indicating his willingness to support her and their unborn child.

Ms. Hotel, unwilling to forgive Appellant for failing to support her when she was hospitalized with pregnancy-related complications, ultimately informed him of her decision to meet with the IO. Appellant responded with a lengthy text message (hereinafter "the 1 August text message") that included the language which forms the basis of his conviction for obstructing justice. In the text message, Appellant stated that he intended to report Ms. Hotel to her employer (the San Diego County Sheriff's Office) for improperly accessing his wife's contact information as part of her continued harassment of Appellant, and for violating privacy regulations by improperly obtaining medical information about him. Despite these threats, Ms. Hotel eventually spoke with the IO, and Appellant carried through on his threat to report her to her employer.

The Government charged Appellant with a violation of a lawful order for wrongfully engaging in a personal, intimate or sexual relationship with Ms. Hotel; abuse of his position as a military recruiter for engaging in sexual activity with Ms. Hotel; and, relevant to this appeal, obstructing justice for wrongfully "intimidat[ing] an applicant for military service . . . by telling her that he 'will make sure you loose [sic] your license as an RN and job,' or words to that effect, with the intent to obstruct the due administration of justice. . . ."[2] When instructing the members prior to deliberations on the obstructing justice charge, the military judge said that:

---

[2] Charge sheet.

> [Y]ou must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements:
>
> . . . .
>
> That [sending the 1 August text message] was done with the intent to influence, impede or otherwise obstruct the due administration of justice.
>
> . . . .
>
> While the prosecution is required to prove beyond a reasonable doubt that [Appellant had] the specific intent to impede the due administration of justice, there need not be an actual obstruction of justice.[3]

Before instructing the members, the military judge asked Appellant if he objected to this instruction or desired additional instructions, and defense counsel responded in the negative to both questions.

## II. DISCUSSION

### A. The evidence supporting Charge III is factually sufficient to sustain a conviction for obstructing justice.

#### 1. Standard of Review

For cases involving crimes that occurred prior to 2021, we review factual sufficiency de novo.[4] The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of an appellant's guilt beyond a reasonable doubt.[5] We do not presume either innocence or guilt, and instead take "a fresh, impartial look at the evidence" to independently determine whether each element has been satisfied with proof beyond a reasonable

---

[3] R. at 729-30.

[4] Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2019); *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). Although Appellant sent the text message that formed the basis for his conviction for obstructing justice on 1 August 2021, his convictions for violation of a lawful general order and abuse of position as a military recruiter involved date ranges spanning from July 2020 to August 2021. Therefore, we review all of his convictions under the prior version of Article 66.

[5] *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also* Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2019) ("In considering the record, the Court may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.").

doubt.[6] Proof beyond a reasonable doubt "does not mean the evidence must be free from conflict."[7]

*2. Analysis*

In order to prove Appellant guilty of obstructing justice, the Government had to prove beyond a reasonable doubt that on or about 1 August 2021: (1) Appellant wrongfully intimidated Ms. Hotel, an applicant for military service, by telling her that he "will make sure you loose [sic] your license as an RN and job," or words to that effect; (2) Appellant did so in the case of a certain person against whom he had reason to believe there were or would be criminal or disciplinary proceedings pending; and (3) the act was done with the intent to obstruct the due administration of justice.[8]

It is undisputed that Appellant sent the 1 August text message to Ms. Hotel threatening to report her to her employer. It is likewise undisputed that at the time he sent the 1 August text message, he was aware that he was under investigation by his command due to his relationship with Ms. Hotel. Appellant argues that his conviction for obstructing justice is factually insufficient because his intent in sending the 1 August text message was to stop Ms. Hotel's harassment, not to prevent her from participating in the command investigation.[9] We disagree and find that Appellant's intent in sending the 1 August text message was to obstruct the due administration of justice by preventing Ms. Hotel from speaking with the IO.

Intent can be proven by either direct or circumstantial evidence,[10] and the circumstantial evidence of Appellant's intent was significant. He sent messages to Ms. Hotel guaranteeing that he would love and support their unborn child and describing the consequences his family would face if she participated in the investigation. And Ms. Hotel testified that Appellant begged her not to speak with the IO. All of these communications took place in the final few days of July, and they all serve as compelling circumstantial evidence that his intent in sending the 1 August text message was to obstruct her from participating in

---

[6] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[7] *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (internal citation omitted).

[8] *See Manual for Courts-Martial, United States* (2019 ed.), pt. IV, para. 83(b); Charge Sheet.

[9] Appellant's Brief at 12.

[10] *See, e.g., United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014); *United States v. Jones*, 32 M.J. 430, 432 (C.M.A. 1991).

the investigation. We are therefore convinced beyond a reasonable doubt that Appellant was guilty of obstructing justice.

**B. Appellant's conviction for obstructing justice is legally sufficient and did not constitute a denial of due process.**

### 1. Standard of Review

To determine legal sufficiency, we ask "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[11] The standard for legal sufficiency therefore "involves a very low threshold to sustain a conviction."[12]

### 2. Analysis

As we found in Section A, the Government clearly established all the elements of obstructing justice. The evidence demonstrated that Appellant sent the 1 August text message to Ms. Hotel with full awareness of the fact that his command was investigating him for engaging in an inappropriate relationship with Ms. Hotel. The circumstantial evidence of his intent was significant, as he had previously spoken to her directly and sent her multiple messages attempting to dissuade her from participating in the investigation. Considering the evidence presented at trial in the light most favorable to the prosecution, a reasonable factfinder could have found all the elements beyond a reasonable doubt. The evidence is therefore legally sufficient.

### a. United States v. Mendoza

Appellant asks us to find the conviction for obstructing justice legally insufficient because "a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."[13] We decline to do so, because that is not what occurred in this case. Appellant relies on the Court of Appeals for the Armed Forces' (CAAF) decision in *United States v. Mendoza* to argue that we should find legal insufficiency because the Government charged one offense under one factual theory of liability and then argued a different offense and a different factual theory at trial.[14] We disagree with Appellant's summation of

---

[11] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

[12] *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

[13] Appellant's Brief at 26 (quoting *Jackson*, 443 U.S. at 314).

[14] Appellant's Brief at 31.

what transpired at trial. The record clearly demonstrates that the Government charged Appellant with sending the 1 August text message with the intent to obstruct justice, then argued and proved at trial that Appellant had the intent to obstruct justice. This is wholly unlike what happened in *Mendoza*, where the Government charged the accused with sexual assault without consent, but instead of proving that the victim did not consent to the sexual act, relied on evidence that the victim was incapable of consenting to the sexual act due to her high level of intoxication.[15] In that case, the CAAF determined that conflating "two different and inconsistent theories of criminal liability" raised "significant due process concerns."[16]

The *Mendoza* Court was particularly troubled that proving a lack of consent by demonstrating that the victim was incapable of consenting "would allow the Government to circumvent the mens rea requirement that Congress specifically added to the offense of sexual assault of a victim who is incapable of consenting."[17] That is because under a charge of sexual assault of a victim who is asleep, unconscious, or otherwise unaware, "the Government must prove not only that the victim was incapable of consenting *but also* that the victim's condition was known or reasonably should have been known by the accused."[18] No similar issue existed in Appellant's case. Even if the intent to "influence" or "impede" are different and inconsistent theories of criminal liability than the intent to "otherwise obstruct," the inclusion of those terms in the military judge's instructions and trial counsel's argument in no way modified the mens rea requirement (specific intent) in Appellant's case. Regardless of the inclusion of the terms "influence" and "impede," the charged offense remained a specific intent crime, and the Government still had to prove (and did so effectively) Appellant's specific intent to obstruct justice.

Even if the military judge's inclusion of instructions on the intent to influence and impede created a similar due process issue to that in *Mendoza*, we can still affirm the findings as legally sufficient. That is because in *Mendoza*, the CAAF did not prohibit service courts of criminal appeals (CCAs) from evaluating the legal sufficiency of convictions in cases where the members were provided an alternate theory of guilt than the one charged. Instead, the CAAF determined that, when situations arise where verdicts could potentially be

---

[15] 85 M.J. 213 (C.A.A.F. 2024).

[16] *Id.* at 215.

[17] *Id.* at 220.

[18] *Id.* (emphasis in original).

based on *uncharged* theories, CCAs must specify that the basis of any affirmance on legal sufficiency grounds is on the *charged* theory.[19] We have done so here. The Government charged Appellant with sending a text message with the intent to obstruct justice. The Government put on evidence to prove that Appellant intended to obstruct justice with that text message, and we find that the evidence that Appellant obstructed justice was legally sufficient.

### b. United States v. Sager

Appellant also relies on the CAAF's decision in *United States v. Sager* to argue that "influence, impede, or otherwise obstruct" are three different and inconsistent theories of criminal liability.[20] We disagree and conclude that they are not. In *Sager*, the accused was charged with abusive sexual contact under Article 120(d), for committing sexual contact while the victim was "asleep, unconscious, or otherwise unaware that the sexual contact was occurring."[21] The CAAF determined that "asleep, unconscious, or otherwise unaware" were three distinct theories of criminality, and "therefore [held] that the CCA erred in its interpretation of Article 120(d) when it 'conclude[d] that asleep or unconscious are examples of how an individual may be "otherwise unaware" and are not alternate theories of criminal liability.' "[22] While we are bound to follow rulings of our superior court, Appellant's case involves entirely different language from an entirely different punitive article, and *Sager*, with its limited holding regarding Article 120(d), is therefore not controlling here.

Although the phrasing of the intent element of obstructing justice, listing three terms in the disjunctive and including the term "otherwise," is syntactically similar to *Sager*, the similarity ends there. That is because for Appellant to be correct, and for "influence," "impede," and "otherwise obstruct" to be different and inconsistent terms, we would have to conclude that Congress intended to distinguish between the almost entirely overlapping terms of "influence the due administration of justice" and "impede the due administration of

---

[19] "The ACCA's opinion affirming Appellant's conviction did not specify whether the ACCA found that [the victim] was capable of consenting, stating only that the evidence established that Appellant engaged in sexual intercourse with a victim whom he knew to be 'highly intoxicated.'" *Mendoza*, 85 M.J. at 222 (citing *U.S. v. Mendoza*, No. 20210647, 2023 CCA LEXIS 198, at *10 (Army Ct. Crim. App. May 8, 2023) (unpublished)).

[20] Appellant's Brief at 30.

[21] 76 M.J. 158 (C.A.A.F. 2017).

[22] *Id*. at 162. (quoting *United States v. Sager*, No. 201400356, 2015 CCA LEXIS 571, at *9 (N-M. Ct. Crim. App. Dec. 29, 2015) (unpublished)).

justice." We would additionally have to conclude that Congress intended to further distinguish those two terms from every other type of obstructing the due administration of justice. Although we recognize that we "must presume that a legislature says in a statute what it means and means in a statute what it says there,"[23] we conclude that the result advocated by Appellant is not the mandated outcome. For as the CAAF made clear in *Sager*, we must "interpret words and phrases used in the UCMJ by examining the ordinary meaning of the language, the context in which the language is used, and the broader statutory context."[24] In so doing, it is clear that these terms, unlike the terms in *Sager*, are properly viewed as creating a single theory of criminal liability.[25]

By any reasonable definition, "influence" and "impede" not only fall under the general umbrella of types of obstruction, but proof of the intent to do either inherently satisfies the requisite proof of intent to do the other (and to obstruct generally). This is unlike the clear and understandable distinctions that exist between the terms "asleep, unconscious, or otherwise unaware." Asleep and unconscious are inherently different states of (un)awareness. They have different physiological causes, and, most importantly, the distinction between them is widely understood. This is not the case with the language at issue here, which is similar to the *Sager* language only in the use of the disjunctive "or" and the term "otherwise." To even endeavor to invent a hypothetical situation where one can impede the due administration of justice without influencing the due administration of justice, or vice versa, requires Olympic-caliber mental gymnastics that we cannot expect of trial practitioners, military judges, or members.[26]

---

[23] *Id.* at 161 (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).

[24] *Id.* at 161 (quoting *United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016)).

[25] To the extent that the text of Article 131b is ambiguous, we may look to its heading, "Obstructing justice," as a "tool[] available for the resolution of a doubt." *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 529 (1947). Doing so reinforces our conclusion that influencing and impeding the due administration of justice are not separate from, but merely examples of, obstructing the due administration of justice. We also note that Article 120(b)(2), as incorporated into Article 120(d) and analyzed in *Sager*, has no similar contextual clue, further distancing Appellant's case from the holding in that case.

[26] Appellant's proffered explanation of how one intent can exist without the others demonstrates the significant hair-splitting required in such an undertaking, and in fact better illustrates that these terms are interchangeable as opposed to distinct:

The *Sager* Court quoted the Supreme Court of the United States in *Reiter v. Sonotone Corp.*, which said that "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."[27] The context clearly dictates otherwise in Appellant's case. A significant difference exists between the purpose of the clauses at issue in the Article 131b charge in Appellant's case and the Article 120(d) charge in *Sager*. Here, the clauses go to an accused's intent, while in Article 120(d) they go to both an accused's knowledge and to the charged act itself.[28] This is not a distinction without a difference. To charge obstructing justice under Article 131b, the Government must allege a wrongful act (in Appellant's case, intimidating Ms. Hotel by sending her a threatening text message) with the specific intent of somehow obstructing justice. Regardless of which synonym for "obstruct" the Government alleges, the charged act and required knowledge do not change. There is therefore no conceivable way that an accused could be disadvantaged by the Government proving that the accused's intent was any of the interchangeable words that fall squarely under the definition of obstruction, as the accused would always be on proper notice of what the Government must prove.[29] This differs considerably from *Sager*, where the disjunctive phrase dealt with the charged act and knowledge, thereby creating potentially impermissible confusion about what the Government had to prove.

---

> One can impede without influencing (i.e., slowing the progress of when someone talks to an investigator without changing what she ultimately tells the investigator). One can influence without impeding (i.e., changing what someone tells an investigator without causing a delay). And one can impede or influence without obstructing (delaying or changing what she tells an investigator without blocking her from speaking to the investigator).

Appellant's Brief at 30.

[27] 76 M.J. at 161-62 (quoting 442 U.S. 330, 339 (1979)).

[28] Article 120(d) includes the clause at issue in both element (ii) ("that the other person was asleep, unconscious, or otherwise unaware that the sexual contact was occurring") and element (iii) ("that the accused knew or reasonably should have known that the other person was asleep, unconscious, or otherwise unaware that the sexual contact was occurring").

[29] This interpretation is consistent with how disjunctives are applied in intent elements in other punitive articles. For example, unpremeditated murder under Article 118 requires the intent to kill or inflict great bodily harm; aggravated and abusive sexual contact under Article 120 require the intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person.

The explanation section of Article 131b in the Manual for Courts-Martial indicates that the President viewed the terms in question interchangeably, much as we do: "Examples of obstruction of justice include wrongfully influencing, intimidating, impeding, or injuring a witness . . . or a party. . . ."[30] The fact that the examples listed include "influencing" and "impeding," along with two other examples, all of which fit neatly and similarly under the general obstruction umbrella, indicates that reading "influence" and "impede" as distinct from, and inconsistent with, "otherwise obstruct," is to put form so far before substance as to produce an untenable result. For although an accused would be prejudiced if the government were to charge him with committing wrongful sexual contact while the victim was asleep, but then prove that the victim was in fact unconscious, no such prejudice would or could occur with an obstructing justice charge. Furthermore, we disagree with Appellant's contention that at trial "Appellant tailored his defense to rebut the charged allegation of intent to obstruct," as opposed to impede or influence.[31] Instead, Appellant argued at trial that his sole motivation in texting Ms. Hotel was to stop her harassment of him and his wife, not to prevent her from participating in the investigation.[32]

Even if Appellant's argument is correct, and the clause at issue in this case must be read to create three distinct theories of criminal intent, the result would not change. That is because, unlike in *Sager*, the Government in Appellant's case charged a single intent (obstruction) and proved that intent. The Government charged Appellant with sending a text message to Ms. Hotel with the intent to obstruct justice, and the Government put on evidence of Appellant's intent to obstruct justice. This is not a situation, like in *Sager*, where Defense was unsure what the Government's theory was, or was unable to properly prepare for trial based on multiple charged theories of criminality. Appellant correctly points out that the military judge included the terms "influence" and "impede" in her instructions on intent. But that created an instructional issue (which Appellant raises in AOE III and we address below), not a due process issue. Furthermore, this instruction did not alter the Government's approach. The Government did not conflate different and inconsistent theories of criminal liability. The Government charged and proved that Appellant intended to obstruct justice when he tried to convince Ms. Hotel not to participate in the command investigation into his misconduct. The military judge's inclusion of these additional terms did not impact the Government's case or play any role in Appellant's conviction, and we therefore conclude that

---

[30] Pt. IV, para. 83(c) at IV-134 (2019 ed.).

[31] Appellant's Brief at 35.

[32] R. at 768-69.

*Sager* does not impact our determination that the evidence supporting Appellant's conviction for obstructing justice was legally sufficient.

## C. Appellant affirmatively waived any objection to the military judge's instruction on the intent element of obstructing justice.

### 1. Standard of Review

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo."[33] "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'"[34] "While we review forfeited issues for plain error, we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal."[35]

### 2. Analysis

In *United States v. Davis*, the CAAF granted review to determine if the military judge properly instructed the members on the elements of an offense, but ultimately found that the issue was waived instead of answering the granted question.[36] Acknowledging that Rule for Courts-Martial (R.C.M.) 920(f) provided that "[f]ailure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes [forfeiture,]" the CAAF went on:

> Appellant did not just fail to object and thereby merely forfeited his claim. He affirmatively declined to object to the military judge's instructions and offered no additional instructions. By "expressly and unequivocally acquiescing" to the military judge's instructions, Appellant waived all objections to the instructions, including in regards to the elements of the offense. . . . As Appellant has affirmatively waived any objection to the military judge's findings instructions, there is nothing left for us to correct on appeal.[37]

---

[33] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)).

[34] *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

[35] *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005)).

[36] *Davis*, 79 M.J. at 332.

[37] *Id.* at 331 (interpreting R.C.M. 920(f) then in effect) (citations omitted).

That is precisely what happened here. Defense counsel affirmatively declined to object to the military judge's instructions, stating that he had no objections to the military judge's proposed instructions and requesting no additional instructions.[38]

Appellant asks us to "revisit [our] application of" *Davis*, however, since its "framework does not account for scenarios in which defense counsel simply overlooks an applicable instruction."[39] We disagree, as the CAAF already considered this issue:

> [T]he instant facts present an even stronger case for waiver than the facts in the most recent *Davis* decision. There, the record was unclear whether the defense even contemplated requesting a mens rea instruction. Nevertheless, we found an "*intentional* relinquishment or abandonment of a *known* right" where the appellant twice affirmatively declined to object to the proposed findings instructions. Here, however, it is evident that Appellant pondered the possibility of requesting a mistake of fact as to consent instruction, but ultimately made no such request.[40]

It is clear that the CAAF foresaw this very situation and intended this very result.[41] Appellant further argues that we should sidestep *Davis* since it "conflicts with the plain language of the RCMs [and] flies in the face of the joint trial script. . . ."[42] As the argument goes, the combination of the *Military Judges' Benchbook*, which specifically prompts the military judge to inquire

---

[38] R. at 723-24.

[39] Appellant's Brief at 39, 41.

[40] *United States v. Rich*, 79 M.J. 472, 477 (C.A.A.F. 2020) (emphasis in original) (citations omitted).

[41] The CAAF continues to follow *Davis*'s precedent as evidenced in a more recent opinion:

> To the extent Appellant now complains about the adequacy of the military judge's limiting instruction, we note that trial defense counsel expressed no similar concerns during the court-martial. Rather, the defense acquiesced in the language of the instruction when it was proposed and given. Therefore, this issue has been waived on appeal. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

*United States v. Wilson*, 84 M.J. 383, 396 n.10 (C.A.A.F. 2024).

[42] Appellant's Brief at 39.

about objections to instructions and requests for additional instructions,[43] and *Davis*, which holds that negative responses to those scripted queries constitutes waiver, swallows the forfeiture provision of R.C.M 920(f). However, the import of the *Benchbook* was not lost on the CAAF when *Davis* was decided:

> The Court's decision has important consequences for counsel in all future trials before members. In this case, the military judge informed counsel of the instructions that he intended to give. Then, in accord with the script in the Military Judges' Benchbook, the military judge asked both parties whether they had any objections to the instructions. Both counsel answered in the negative. The Court holds that their answers waived (and not merely forfeited) any objection to the instructions and that this waiver prevents any review of the instructions. *Counsel in future cases therefore must be especially careful to raise any objections that they might have to proposed instructions when the military judge asks them—as military judges do in almost every case before members—whether they have any objections.*[44]

Bound as we are to follow our superior court's binding precedent, we elect not to revisit our application of *Davis*. We therefore find that Appellant waived the issue of whether the military judge erred in her instructions on the intent element of obstructing justice.

**D. Trial defense counsel did not provide ineffective assistance by failing to object to the military judge's instruction on obstructing justice's intent element.**

*1. Standard of Review*

"[T]he [Sixth Amendment] right to counsel is the right to the effective assistance of counsel."[45] "Allegations of ineffective assistance of counsel are reviewed de novo."[46]

---

[43] *See* Dep't of Army Pam. 27-9, *Military Judges' Benchbook*, paras. 2-5-20 (Nov. 19, 2025) ("MJ: Counsel, I intend to give the standard sentencing instructions. Do counsel have any requests for any special instructions?"); 2-5-25 (Nov. 19, 2025) ("MJ: Do counsel object to the instructions as given or request other instructions?").

[44] *Davis*, 79 M.J. at 332 (Maggs, J., concurring) (citation modified) (emphasis added).

[45] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann* v. *Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[46] *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

*2. Analysis*

Pursuant to *Strickland v. Washington*, to prevail on a claim of ineffective assistance of counsel, an appellant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[47] An appellant first "must show that counsel's representation fell below an objective standard of reasonableness."[48] "Judicial scrutiny of counsel's performance must be highly deferential[,]" and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."[49] Second, an appellant "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [appellant] of a fair trial, a trial whose result is reliable."[50] An appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[51] And relevant here:

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.[52]

Appellant argues that "[a]llowing your client to be convicted on an uncharged theory of criminal liability cannot possibly be a strategic decision."[53] While this proposition makes intuitive sense, we do not agree that it applies in Appellant's case. As we explained above, the terms "influence" and "impede" did not subject Appellant to uncharged theories of criminal liability, and defense counsel's failure to object to their inclusion in the instructions was therefore not error. Even if those terms did subject Appellant to uncharged theories

---

[47] *Strickland*, 466 U.S. at 687.

[48] *Id.* at 688.

[49] *Id.* at 689.

[50] *Id.* at 687.

[51] *Id.* at 694.

[52] *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 689-90).

[53] Appellant's Brief at 44.

of criminal liability, however, we need not determine whether defense counsel's failure to object fell below an objective standard of reasonableness, since:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [appellant] as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[54]

We are convinced that even had the military judge omitted the intents to "influence" and "impede" from the instructions in response to an objection by defense counsel, the result of the proceeding would have been the same. There is no reasonable probability that the members would have arrived at a different verdict absent the military judge's inclusion of the additional intent instructions. This is evident for two reasons. First, the Government clearly demonstrated that Appellant sent the 1 August text message with the intent to obstruct justice, and the members did not need to rely on any lesser or different level of intent to arrive at a guilty verdict. Second, Appellant's defense at trial, both before and after the military judge instructed the members on the three different intent terms, was unmistakably that he did not intend the 1 August text message to impact Ms. Hotel's decision whether to speak with the IO. Instead, Appellant's theory throughout trial was that "his intent was to stop Ms. Hotel's harassment."[55] The members clearly rejected this argument because of the evidence presented at trial, not because of the military judge's inclusion of two additional undefined terms in the intent instruction. Therefore, because Appellant suffered no prejudice, we reject his claim of ineffective assistance of counsel.

---

[54] *Strickland*, 466 U.S. at 697.

[55] Appellant's Brief at 12.

### III. CONCLUSION

After careful consideration of the record, the briefs of appellate counsel, and the oral argument held on 20 November 2025, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[56]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[56] Articles 59 & 66, UCMJ.